UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

UNITED STATES OF AMERICA,

                    Plaintiff,          <u>MEMORANDUM</u>

   -against-                   Criminal Action No.
                                        CR-94-823 (DGT)

LEMRICK NELSON, JR.,

                    Defendant.

-------------------------------X

TRAGER, J.:

     On August 10, 1994, defendant was charged in a juvenile information with violating §§ 2 and 245(b)(2)(B), Title 18 of the federal civil rights law.  The information alleges that on August 19, 1991, defendant and others "did wilfully injure, intimidate and interfere with, and attempt to injure, intimidate and interfere with, Yankel Rosenbaum, an Orthodox Jew, because of his religion and because he was enjoying facilities provided and administered by a subdivision of the State of New York, namely, the public streets provided and administered by the City of New York, and bodily injury to and the death of Yankel Rosenbaum did result."

     On August 10, 1994, this case was assigned to me pursuant to a random draw from the criminal assignment wheel of the United States District Court for the Eastern District of New York. Subsequently, defendant moved that I recuse myself.  On October 11, 1994, I denied the motion and indicated that an opinion

explaining the reasons for the denial would be filed at the conclusion of the case. This is that opinion, slightly revised to reflect the Second Circuit's recent decision in <u>MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>, 138 F.3d 33 (2d Cir. 1998).[1]

Defendant's Notice of Motion and moving affidavit sets forth essentially four grounds for the recusal motion.

First, I am an Orthodox Jew and a board member of an Orthodox Jewish group.

Second, I have a "close relationship" with and am a "close friend" of Judah Gribetz, Esq., "the head of an organization which brought about this federal prosecution" and "seeks . . . [defendant's] conviction on federal criminal civil rights charges." The moving affidavit states that I am "beholden to [Mr.] Gribetz, who . . . nominated [me] to Senator Daniel Moynihan for [my] present federal judgeship, as head of an 11 member nomination panel." In addition, the affidavit asserts the defendant's belief that Mr. Gribetz is a financial contributor to the Rashi Association, the Orthodox group of which I am a board member.

Third, I was formerly an Assistant United States Attorney for the Eastern District of New York.

Fourth, while serving as chairman of the Temporary State Commission of Investigations, I was accused by a New York State

---

[1]  This opinion was prepared in 1998 and is docketed belatedly.

Supreme Court Justice of improperly attempting to interfere with a criminal case.

Defendant's motion is made pursuant to two statutory provisions -- 28 U.S.C. §§ 144 and 455(a). Section 144, entitled "Bias or prejudice of judge," provides for recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has <u>a personal bias or prejudice either against him or in favor of any adverse party</u>." (emphasis added). Section 455(a), entitled "Disqualification of justice, judge, or magistrate," provides for disqualification in "any proceeding in which [the judge's] impartiality might reasonably be questioned."

While § 144 is directed towards a judge's bias or prejudice against a particular litigant, section "455(a) concerns not only fairness to individual litigants, but, equally important, it concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears ;to be tainted.'" <u>Alexander v. Primerica Holdings Inc.</u>, 10 F.3d 155, 162 (2d Cir. 1993)(quoting <u>In re Sch. Asbestos Litig.</u>, 977 F.2d 764, 776 (3d Cir. 1992)).

## 28 U.S.C. § 144

In this circuit, a judge who is presented with a motion for recusal made pursuant to 28 U.S.C. § 144 must first determine whether the procedural requirements have been met and whether the

affidavit submitted in support of the motion is legally
sufficient.  See, e.g., McCann v. Commc'ns Design Corp., 775
F. Supp. 1506, 1523 (D. Conn. 1991) (Cabranes, J.); United States
v. Johnpoll, 748 F. Supp. 86, 88 (S.D.N.Y. 1990) (Carter, J.);
Lamborn v. Dittmer, 726 F. Supp. 510, 514 (S.D.N.Y. 1989)
(Carter, J.).  Because the motion and the affidavit in support of
the motion under § 144 are both procedurally deficient and
substantively insufficient, the motion is denied.

I discuss first the substantive inadequacies of the motion.
In determining legal sufficiency of a § 144 motion, the judge
must accept the allegations in the affidavit as true, see Berger
v. United States, 255 U.S. 22, 30 (1921), even if the judge knows
that the allegations are false.  Accepting and applying this
principle here, defendant's affidavit still does not provide a
legally sufficient basis for recusal under 28 U.S.C. § 144.

The first ground offered by defendant in his affidavit in
support of recusal is that I am an Orthodox Jew and am a board
member of an Orthodox Jewish organization devoted "to
preserv[ing] Jewish memorials in Europe."  Affidavit of Lemrick
Nelson, Jr., sworn to September 21, 1994, ¶ 3.  This is a
constitutionally impermissible basis on which to make such a
motion.  The Supreme Court has held that the Equal Protection
Clause precludes challenges to jurors on the basis of race and
gender.  In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme

Court held that the Equal Protection Clause of Fourteenth Amendment forbids a prosecutor in a criminal case from exercising peremptory challenges based on the race of a juror, and in _J.E.B. v. Alabama ex rel. T.B._, 511 U.S. 127 (1994), the Court held that gender, like race, is an unconstitutional basis on which to challenge juror competence and impartiality.

While it has not yet ruled explicitly that religion is an equally offensive ground for a peremptory challenge, there is no principled basis for sanctioning such challenges. In _United States v. Greer_, 968 F.2d 433 (5th Cir. 1992) (en banc), the Court of Appeals for the Fifth Circuit upheld a district court's refusal to strike all black, Latino and Jewish jurors for cause in a civil rights violation case against a group of white "skinheads". _See also Davis v. Minnesota_, 511 U.S. 1115 (1994) (Thomas, J., joined by Scalia, J., dissenting from a denial of certiorari) (Justice Thomas would extend _Batson_ and _J.E.B._ to prohibit peremptory challenges based on religion of juror). In addition to the Equal Protection Clause, such a challenge implicates the Free Exercise Clause of the First Amendment. In _McDaniel v. Paty_, 435 U.S. 618 (1978), the Supreme Court invalidated on First Amendment grounds a Tennessee provision disqualifying clergy from being legislators or constitutional convention delegates.

Moreover, when a judge, instead of a juror, is asked to recuse himself from a case because of his religion, the challenge implicates the declaration in Art. VI, cl. 3 of the Constitution which provides that "no religious Test shall ever be required as a Qualification to any office or public Trust under the United States." See Torcaso v. Watkins, 367 U.S. 488, 496 (1961) (holding that a Maryland law requiring all holders of public office to declare a belief in the existence of God was unconstitutional).

If Congress had enacted a statute disqualifying judges from sitting on certain cases because of their religious beliefs or because one of their co-religionists had some involvement or interest in the outcome of the case, there is no doubt that such a statute would be struck down. The defendant's effort to invoke an act of Congress to achieve such a result is equally unacceptable.

Indeed, defendant's argument stands on the same infirm footing as motions that have been made to recuse my African-American and female colleagues in civil rights cases where the victim of the alleged discrimination was black or female. See, e.g., Paschall v. Mayone, 454 F. Supp. 1289, 1299-1301 (S.D.N.Y. 1978) (Carter, J.) (in civil rights violation case, defendants were not entitled to disqualification of trial judge under 28 U.S.C. §§ 144 and 455(a) where affidavit merely sketched the

judge's employment background and civil rights involvement as
Assistant Special Counsel and General Counsel to the N.A.A.C.P.
and a member of N.Y.S. Special Comm. on Attica just prior to
becoming a federal judge); Blank v. Sullivan & Cromwell, 418
F. Supp. 1, 4 (S.D.N.Y. 1975) (Motley, J.) (in sex discrimination
case, defendants were not entitled to disqualification of trial
judge who had engaged in civil rights litigation and who was of
the same sex as plaintiff); United States v. Ibrahim El-Gabrowny,
844 F. Supp. 955 (S.D.N.Y. 1994) (Mukasey, J.) (holding that a
motion to recuse judge in case involving Muslim fundamentalist
was without merit for merely stating that judge follows precepts
of Orthodox Judaism and holds Zionist political beliefs).

     The same result should and would obtain were a motion made
to recuse my Roman Catholic colleagues from sitting on any case
in which the issue of the legality of abortion was raised.  See
State of Idaho v. Freeman, 507 F. Supp. 706, 731-33 (D. Idaho
1981) (in a suit to rescind ratification of Equal Rights
Amendment, trial judge's holding office of Regional
Representative in Church of Jesus Christ of Latter-day Saints did
not require disqualification even though church leaders may have
stated opposition to the amendment and extension of ratification
deadline).

     In an often cited opinion on judicial disqualification,
Judge Leon Higgenbotham, then sitting in the district court, when

confronted with the allegation that, in addition to being "a leader for and among blacks," his speech in front of a group of black historians in which he criticized two recent Supreme Court decisions on racial discrimination evidenced a personal bias against the defendant in a civil rights law suit involving alleged racial discrimination, wrote: "[T]he facts pleaded [in such an affidavit] will not suffice to show the personal bias required by [28 U.S.C. § 144] <u>if they go to the background and associations of the judge rather than to his appraisal of a party personally</u>." <u>Commonwealth of Pa. v. Local U. 541, Int. U. of Op. Eng.</u>, 388 F. Supp. 155, 159 (E.D. Pa. 1974), <u>aff'd</u> 478 F.2d 1398 (3d Cir. 1974), <u>cert</u>. <u>denied</u>, 421 U.S. 999 (1975) (emphasis added). <u>Accord</u> <u>Parrish v. Bd. of Comm'rs of Ala. State Bar</u>, 524 F.2d 98, 101 (5th Cir. 1975) (en banc), <u>cert</u>. <u>denied</u> 425 U.S. 944 (1976); <u>Parker Precision Prods. Co. v. Metro. Life Ins. Co.</u>, 407 F.2d 1070, 1077-78 (3d Cir. 1969); <u>In re J.P. Linahan, Inc.</u>, 138 F.2d 650, 651-52 (2d Cir. 1953); <u>Price v. Johnston</u>, 125 F.2d 806, 811 (9th Cir. 1942), <u>cert</u>. <u>denied</u> 316 U.S. 677 (1942). Recently, Chief Judge Winter, in an opinion upholding sanctions against a lawyer who made a recusal motion in part based upon the judge's racial and ethnic heritage, stated:

> A suggestion that a judge cannot administer the law fairly because of the judge's racial and ethnic heritage is extremely serious and should not be made without a factual foundation going well beyond the judge's membership in a particular racial or ethnic

8

> group. Such an accusation is a charge that
> the judge is racially or ethnically biased
> and is violating the judge's oath of office.

MacDraw, 138 F.3d at 37.

Moreover, a motion based even in part on such a
constitutionally impermissible ground shifts the burden to the
defendant to prove that the other grounds offered to justify the
motion are not pretextual. See Howard v. Senkowski, 986 F.2d 24,
30 (2d Cir. 1993). Defendant's moving papers do not meet this
burden. If anything, they confirm the sham nature of these
alternate grounds. Two of the three lack even a semblance of
relevance to this proceeding.

Thus, ¶ 7 of defendant's affidavit states that:

> Judge Trager was accused by a New York State
> Supreme Court Justice of improperly attempt-
> ing to interfere with a criminal case, while
> serving as chairman of the Temporary State
> Commission of Investigations. Patrick Henry,
> formerly Suffolk County District Attorney
> Characterized [sic] Trager's misconduct as
> having poisoned a criminal prosecution beyond
> repair[.]

A minimal level of professional responsibility, Model Code of
Professional Responsibility DR 8-102(B) (1980); Model Rules of
Professional Conduct Rule 8.2(a) (1983), and a modicum of legal
research would have disclosed to defendant's counsel that this
decision had been reversed and that the judge involved had been
chastised by the Appellate Division for his remarks concerning
the Commission and its members. See People v. Gallagher, 143

A.D.2d 929, 933 (2d Dept. 1988).[2]  Moreover, even if the
statements were completely accurate, they have no relevance here.
They simply do not establish the "personal bias or prejudice
either against [the defendant] or in favor of [the United
States]" that is required by § 144.  Moreover, one is at a loss
to understand how the fact that a judge has been an Assistant
United States Attorney would by itself indicate a <u>personal</u> bias
against a particular defendant.  Rather, what is indicated by the
complete lack of any relevance of these two grounds is their
pretextual nature.

Significantly, the affidavit also offers no basis for
defendant's belief that the "facts" alleged in the affidavit to
support the various grounds for recusal are true.  Not a word is
said about the efforts that were undertaken to determine if there
was a factual basis for any of the claims or a good faith basis
for believing them to be so; nor are any reasons offered for
counsel's failure to do so.  A simple inquiry would have allowed
counsel to determine whether or not there was a factual basis for
almost all of the claims.  Thus, the lack of minimal relevancy of
at least two of the grounds as well as the complete failure to
make any investigation also evidences the pretextual nature of

---

[2]  Counsel would also have learned that the criminal prosecution
which Mr. Henry predicted had been "poisoned . . . beyond repair"
ended successfully for the prosecution.

the other grounds offered and the real reason for this motion —
namely, my religion.

Although the motion is being denied because it rests on
constitutionally unacceptable grounds, none of the three
alternative grounds — even if they were not pretextual and were
made in good faith — justifies this recusal motion and counsel
has not cited a single authority to support such an assertion.
None of these alternate grounds — my "close relationship" or
"friendship" with Mr. Gribetz, the fact that I have been an
Assistant United States Attorney, or my work as Chairman of the
State Commission on Investigation — provides a legally sufficient
basis for my recusal under § 144.

Only the first has even a veneer of germaneness.  But the
proposition that a judge who is a close friend of someone who
also had supported and sponsored his nomination for the bench is,
therefore, precluded from sitting in any case in which that
sponsor, although not a party, has strong views, is a <u>reductio</u> <u>ad</u>
<u>absurdum</u> argument.  The logic of defendant's argument would lead
to the wholesale disqualification of Justices of the Supreme
Court and judges of every other federal court in any case which
involved an issue on which the President, who nominated the
judge, the Senator who recommended the judge or any person or
friend who supported the judge's nomination had publicly ex-
pressed strong opinions.  Indeed, in <u>United States v. Nixon</u>, 418

U.S. 683 (1974) (Burger, C.J.), which involved President Nixon's efforts to exclude himself from a criminal investigation, and in which four of his own appointees joined in a unanimous opinion rejecting the President's assertion of executive privilege, is one of the those cases that implicitly reject the proposition that recusal is required to avoid an appearance of partiality, even if the motion to recuse was not simply a pretext.

The affidavit's claim that I am "beholden" to Mr. Gribetz because of friendship or the role that he may have played in my nomination is on its face insufficient.  Although I must accept defendant's allegations as true, this statutory obligation, however, does not preclude the court from putting the facts alleged into their proper context and examining the surrounding circumstances.  <u>See</u> <u>McCann</u>, 775 F. Supp. at 1524.  Thus, I think it is of some significance to note that the Committee's recommendation to Senator Moynihan was made in January 1991, and that Senator Moynihan publicly announced that he would be recommending my name to the President in early March, 1991, more than five months before the events that form the basis of the information filed in this case even took place.

Defendant's argument also assumes that a judge would automatically feel so beholden to his recommenders that he "would violate his deepest professional and ethical commitments as a

judge."  <u>In re United States</u>, 666 F.2d 690, 695 (1st Cir. 1981).

As Chief Judge winter recently wrote in <u>MacDraw</u>,

> Nor should one charge that a judge is not
> impartial solely because an attorney is
> embroiled in a controversy with the
> administration that appointed the judge.
> Judges generally have political backgrounds
> to one degree or another but must be
> presumed, absent more, to be impartial.  At
> least in the federal system, judges separate
> themselves from politics when going on the
> bench, and their life tenure reduces any felt
> reliance on political patrons.

<u>MacDraw</u>,138 F.3d at 38.

Finally, the motion must be denied because it is also

procedurally defective.  The certification filed by counsel is

that the affidavit of his client, the defendant, is made in good

faith.  That may well be true since the defendant may well be

relying on information furnished by his counsel.  But it is not

sufficient.  Counsel must certify <u>his</u> belief that the affidavit

as well as the motion is brought in good faith.  The reason for

this requirement is that since the court "cannot test the truth

of [the] claimed facts," the law requires counsel's certification

that the motion is made in good faith.  <u>In re Union Leader</u>, 292

F.2d 381, 385 (1st Cir.), <u>cert</u>. <u>denied</u>, 368 U.S. 927 (1961); <u>see</u>

<u>also</u> <u>United States v. Johnpoll</u>, 748 F. Supp. 86, 89 (S.D.N.Y.

1990) (Carter, J.); <u>Lamborn</u>, 726 F. Supp. at 515.  The failure of

counsel to file such a certification is further indication that

the motion to recuse was brought without a good faith basis by

counsel to recuse a United States district judge from exercising his responsibilities solely because of his religious beliefs.

Accordingly, for all of the above reasons, defendant's motion pursuant to § 144 is denied.

## 28 U.S.C. § 455(a)

28 U.S.C. § 455 (a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) is broader than § 144, and provides that an appearance of prejudice, as well as actual prejudice, is a basis for recusal. See Lamborn, 726 F. Supp. at 516. The test for an appearance of prejudice, however, is not the subjective belief of the movant or her attorney, or even that of the judge, but whether facts have been presented, that if true, would lead an objective person to infer that bias or prejudice exists, thereby foreclosing the impartiality of judgment. See United States v. Cowden, 545 F.2d 257, 265 (1st Cir.), cert. denied, 430 U.S. 909 (1976). "It is important to note that even though the standard is subjective, the circumstances are viewed through the eyes of a reasonable person rather than a person who is highly sensitive." In re Searches Conducted on Mar. 5, 1980, 497 F. Supp. 1283, 1291 (E.D. Wis. 1980).

The issues presented by this motion were well summarized in an opinion by former Chief Judge Coffin of the Court of Appeals

14

for the First Circuit, <u>In re United States</u>, and it is worth
quoting at length:

> We deem it of first importance to recognize
> at the outset the twin-and sometimes
> competing-policies that bear on the
> application of [28 U.S.C. § 455(a)]. The
> first and most obvious policy is that courts
> must not only be, but must seem to be, free
> of bias or prejudice. To ensure that the
> proceedings appear to the public to be
> impartial and hence worthy of their
> confidence, the situation must be viewed
> through the eyes of the objective person.
>
> A second and less obvious policy is that a
> judge once having drawn a case should not
> recuse himself on a unsupported, irrational,
> or highly tenuous speculation; were he or she
> to do so, the price of maintaining the purity
> of appearance would be the power of litigants
> or third parties to exercise a negative veto
> over the assignment of judges. Because there
> exists this second policy, our inquiry cannot
> stop with the questions: have a number of
> people thought or said that a judge should
> not preside over a given case? has the
> judge's failure to recuse himself been a
> subject of unfavorable comment in the media?
> or, would the judge have avoided controversy
> and the need for appellate review if he had
> stepped aside? Instead, we must conduct our
> review in accordance with ground rules
> designed to determine when the fear of
> partiality is real and strong enough to
> require disqualification.
>
> First, a charge of partiality must be
> supported by a <u>factual basis</u>. Although
> public confidence may be as much shaken by
> publicized inferences of bias that are false
> as by those that are true, a judge
> considering whether to disqualify himself
> must ignore rumors, innuendos, and erroneous
> information published as fact in the
> newspapers. To find otherwise would allow an
> irresponsible, vindictive or self-interested

> press informant and/or an irresponsible,
> misinformed or careless reporter to control
> the choice of judge.  Second,
> disqualification is appropriate only if the
> facts provide what an objective,
> knowledgeable member of the public would find
> to be a <u>reasonable basis</u> for doubting the
> judge's impartiality.  Were less required, a
> judge could abdicate in difficult cases at
> the mere sound of controversy or a litigant
> could avoid adverse decisions by alleging the
> slightest of factual bases for bias.

666 F.2d 690, 694-95 (1st Cir. 1981)(citations omitted) (emphasis

in original).

Thus, in contrast to the standard governing motions under

§ 144, in determining a motion under § 455(a), the true situation

does matter, and not what has been written in the press or what

the loudest complainant might say to influence public opinion.[3]

Many opinions have discussed the impact of a judge's

"friendship" with a litigant or "interested party" on the

decision to disqualify under § 455(a).  In few cases, however,

has disqualification been deemed required.  <u>See</u> <u>Union Bank &</u>

<u>Trust Co. of Greensburg v. Nyhart Co., Inc.</u>, 765 F. Supp 976

(S.D. Ind. 1991) (Tinder, J.).  In <u>Union Bank & Trust</u>, Judge

Tinder stated:

> Friendship means many things, but it is
> rarely adequate grounds upon which to seek
> recusal of a federal judge.  Every federal

---

[3]  Since, as noted in the discussion of § 144, my religious
beliefs or practices simply cannot be of any concern to the
defendant, the court will assume for purposes of discussion of
§ 455(a) that I am an "Orthodox Jew."

> judge takes a solemn oath to uphold the
> Constitution and laws of the United States.
> That oath would provide little solace to the
> thousands of litigants who daily seek redress
> of their legal claims in federal court were
> it supposed that judges would regularly be
> unable to set aside personal friendships in
> order to uphold the law.

Id. at 977.  When confronted with a situation in which one of the judge's "long-time personal friend[s]" would be testifying as a principal fact witness, Judge Tinder noted that "if the motion for recusal identified no more than friendship with [ ], a witness but not a party in this litigation, as the basis for recusal of this judge, then, based on the precedents set forth above, this court would be required to deny that motion."  Id. at 978.  However, Judge Tinder, after being presented with a motion pursuant to 455(a), ultimately disqualified himself because the friend/witness, who was an officer and stockholder of the defendant in the case, had a "very specific financial interest" in the outcome of the litigation and the friend's expected testimony was pivotal to the case.  Id. at 979-980 (emphasis added).

One of the precedents cited by Judge Tinder was M.K. Metals, Inc. v. Nat'l Steel Corp., 593 F. Supp. 991 (N.D. Ill. 1984)(Shadur, J.).  In M.K. Metals, Judge Shadur was confronted with a motion for disqualification under § 455(a) where he had previously provided legal representation to the firm of which a prospective witness was a principal, had been a co-trustee of

17

trusts of which another principal of the firm was a beneficiary,

and was a friend of that principal.  Writing on the issue of his

friendship with the principal, Judge Shadur stated:

> In short, friendship between judges and trial
> actors other than parties, <u>untainted by any</u>
> <u>financial interests</u>, should not generally
> justify recusal.  Even if that rule were to
> be altered to include egregious cases of
> apparent partiality toward witnesses, this is
> not such a case.  As for the actual witness,
> I do not know [him].  As for his employer,
> even were I to abandon my ethical
> responsibilities, nothing I could do would
> help or hurt [him] in any significant way.
> Accordingly any such questioning of my
> partiality on M.K.'s part is simply not
> reasonable.

<u>Id</u>. at 996 (footnotes omitted) (emphasis added).

Judge Shadur refused to disqualify himself notwithstanding his

friendship with the principal of the firm, nor because of his

investments in limited partnerships in which the family trust of

the principal also held investments, or because of the former

fiduciary obligation he owed to that principal.  <u>See</u> <u>id</u>. at 993-

96.

Judge Tinder also cited the opinion of Chief Judge Coffin in

<u>In re United States</u>, 666 F.2d at 690.  In that case, the First

Circuit upheld a district judge's refusal to disqualify himself

under § 455(a) in a case in which the judge had a close

professional and personal relationship with a former governor,

and the defendant, a former state Senator who, as chair of a

legislative investigation of the governor's administration,

allegedly was helpful to the governor during the investigation. In upholding the district judge's denial of the motion to disqualify, Chief Judge Coffin wrote:

> If the receipt by a judge's friend of a favor long ago from one who is a present litigant should disqualify the judge, judges could hope to preside without challenge solely in communities in which they are strangers. For when a judge presides in an area where he and his family have lived for one or more generations, the numbers of people who have, directly or indirectly, helped family members, relatives, close friends, and friends of friends would form a large and indeterminate community. So also are there bound to be indefinite numbers of people who have been critical of or been on opposite sides of controversies with families, relatives, and friends. Not only would the role of judges be severely constricted by requiring disqualification under these circumstances but the result would reflect a more jaundiced view as to when there should be a reasonable doubt about a judge's impartiality than accords with the public perception.

Id. at 696-97.

As Chief Judge Coffin indicated, the actual facts do matter and perceptions can not determine the issue. Here, the facts are these. I have known Mr. Gribetz for over fifteen years and worked closely with him professionally and intimately on at least three occasions: first, when he was counsel to then-Governor Carey and I was the United States Attorney for this district; second, when we were both members of the Mayor's Committee on the Judiciary; and third, when we served as members of the New York

19

City Charter Revision Commission.  As a result of these
professional relationships, I have gotten to know Mr. Gribetz
well, and he is someone whom I admire and respect greatly.  He is
not, however, a personal friend, as the defendant's affidavit's
use of the term "close friend" implies.  Although I am not in a
position to evaluate the ultimate significance of his role as
Chairman of Senator Moynihan's selection committee, I have no
doubt that Mr. Gribetz played an important role in recommending
me.  However, the fact remains that he was one of eleven members
of the committee and it was Senator Moynihan's recommendation to
Presidents Bush and Clinton that was critical to my nomination.
It is not reasonable, therefore, for anyone to expect me to feel
any more beholden to Mr. Gribetz than I do to the other members
of the committee and to the many other persons who supported my
nomination to Senator Moynihan and President Clinton.

As for Mr. Gribetz's relationship to the Rashi Association,
the organization is a relatively small one and I doubt very much
whether Mr. Gribetz was even aware of its existence.  I certainly
am unaware of any involvement on his part or whether he is or
ever was a financial contributor.  Furthermore, although there
are no doubt some members of this organization who are Orthodox
Jews, its membership is principally made up of non-Orthodox Jews.
Indeed, its professional staff here consists of one person who is

not Jewish and its limited activities in Europe are today carried on primarily by Christians.[4]

Based on the facts, as well as on frivolous nature of the other two grounds for the motion, and the lack of any semblance of relevance of them, as well as the failure of counsel to make the most limited investigation of the facts, a reasonable and objective person can and would conclude that this motion was made simply because I am an Orthodox Jew.  See Menora v. Ill. High Sch. Assoc., et al., 527 F. Supp. 632, 636 (N.D. Ill. 1981).

Accordingly, defendant's motion pursuant to § 455(a), which alleges an appearance of impropriety rather than personal bias, is likewise denied for the same reasons as the § 144 motion.

Dated:  Brooklyn, New York
        June 28, 2010

                                    SO ORDERED:


                                    _____/s/_____
                                    David G. Trager
                                    United States District Judge


_____

[4]  I will also assume the truthfulness of the claim that Mr. Gribetz played a significant role in bringing about this prosecution, although in assuming this, in no way am I to be interpreted as indicating that his conduct was in any way improper any more than the conduct of the leaders of the African-American community who, when I was United States Attorney, urged upon me a second prosecution following an acquittal in Kings County Supreme Court of a white policeman, charged with the murder of a black youth without justification.